JUDGE PALLMEYER

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAGISTRATE JUDGE COX

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| PIERE PAOLO GENNELL, a/k/a "P," | ) |
| JOSE F. HERNANDEZ, a/k/a "Nene," | ) |
| MARIO A. HERNANDEZ, a/k/a "DK," | ) |
| ULISES DE LA CRUZ, a/k/a "Pansas," | ) |
| MIGUEL MARTINEZ, a/k/a "Smokey," | ) |
| DAVID PEREZ, a/k/a "Monster," | ) |
| RUBEN MORENO, a/k/a "Terrorist," | ) |
| OSCAR ORTIZ, a/k/a "Thirsty," | ) |
| EFRAIN MEDINA, a/k/a "Bowser," | ) |
| ELLEZER TORRES, a/k/a "Bad Boy," | ) |
| EDGAR VELARDE-SALDANA, a/k/a | ) |
| "Chapo" and "Pisa," | ) |
| JOSE PENA, a/k/a "Dre," | ) |
| JOSE A. VASQUEZ, a/k/a "Tinky" and | ) |
| "Pantera," | ) |
| ANGEL VILLAGRANA, a/k/a "Shy," and | ) |
| EDUARDO HERNANDEZ, a/k/a "Lurch" | ) |

No. **16CR 462**

Violations: Title 18,
United States Code, Sections
111, 922(g), 924(c)(1)(A), 1113,
1114, 1959(a) and 1962(d)

**UNDER SEAL**

July 21, 2016

FILED

JUL 21 2016

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## COUNT ONE

The SPECIAL JANUARY 2015 GRAND JURY charges:

### THE RACKETEERING ENTERPRISE

At times material to this Indictment:

1.     The defendants, and others known and unknown, were members and associates of the "Almighty Latin King Nation" Street Gang, a criminal organization whose members and associates engaged in acts of violence, including murder, attempted murder, assault with a dangerous weapon, arson, and extortion. The

-1-

defendants operated principally in Maywood and Melrose Park, in the Northern District of Illinois, Eastern Division, and elsewhere.

2.    The Latin Kings, including its leadership, membership, and associates, constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, which engaged in, and the activities of which affected, interstate and foreign commerce.

3.    The Latin Kings enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

## STRUCTURE OF THE ENTERPRISE

4.    The structure of the Latin Kings included, but was not limited to, the following:

a.    The Latin Kings were a violent street gang with members across the United States.

b.    The Latin Kings had a detailed and uniform organizational structure, which was outlined – along with various "prayers," codes of behaviors, and rituals – in a written "manifesto" or "constitution" widely distributed to members throughout the country, including in Illinois.

c.    Within each state, the Latin Kings were organized by geographical location into "regions." Each region was comprised of "sections," sometimes called "branches" or "chapters." Within each region, there were regional

-2-

leadership positions, sometimes referred to as "Nation" positions, filled with members from the different sections within that region. The regional leadership was responsible for resolving disputes between sections.

    d.    Each section was typically named after the city, township, or village, or by a street or streets that ran through the section and had its own chain of command. The "Chairman" led the "Crown Council," which was a smaller group of section members who were responsible for resolving disputes involving the section's leadership and also reported to regional leaders. Under the "Crown Council," each section was comprised of: a leader or "Inca"; a second-in-command or "Cacique"; a "Chief Enforcer" and "Enforcer" who served to support the Inca and Cacique, as well as enforce discipline and adherence to established rules and laws; a "Treasurer," who was responsible for the gang's finances (including collecting member "dues," purchasing firearms for the gang's use, as well as hiring lawyers for and sending money to incarcerated members) and all of whom were in charge of the non-ranking members, or "soldiers," within the section.

    e.    There were several regions of the Latin Kings operating in Chicago, the suburbs of Chicago, and the Northern Indiana area. One such region was the "Midwest" region. Included within the Midwest region were numerous sections of the Latin Kings, including the Maywood section and the Melrose Park section, which was sometimes referred to as the "18th and Bloomingdale" section or the "M-Town" section. The geographical location controlled by the Maywood section

included the area east of 25th Avenue, west of 1st Avenue, north of Lake Street, and south of North Avenue, in Maywood and Melrose Park, Illinois.

   f. At various times, the Maywood section of the Latin Kings was divided into two groups or "circles": a group of older members, sometimes referred to as the "Junior" circle or "older" circle; and a group of younger members, sometimes referred to as the "Pee-Wee" or "Shorty" circle. During the time periods when the Maywood section was split into an older and younger circle, each circle had its own set of leaders, but the ranking members of the younger circle still reported to the ranking members of the older circle.

## PURPOSES OF THE ENTERPRISE

   5. The purposes of the enterprise included, but were not limited to, the following:

   a. Enriching the leaders, members, and associates of the enterprise through, among other things, the use of threats, intimidation, and violence, including acts of murder, attempted murder, assault with a dangerous weapon, arson, extortion, and other acts of violence, the imposition of a street tax on narcotics traffickers, and drug trafficking;

   b. Promoting and enhancing the enterprise and its members' and associates' activities;

   c. Preserving and protecting the power, territory, operations, and proceeds of the enterprise through the use of threats, intimidation, and violence,

-4-

including, but not limited to, acts of murder, attempted murder, assault with a dangerous weapon, arson, extortion, and other acts of violence;

d.    Keeping victims in fear of the enterprise and in fear of its leaders, members, and associates through threats of violence and violence;

e.    Taking steps designed to prevent law enforcement's detection of the enterprise's criminal activities; and

f.    Providing support to gang members who were charged with, or incarcerated for, gang-related activities.

### ROLES IN THE ENTERPRISE

6.    At times material to this Indictment:

a.    PIERE PAOLO GENNELL, a/k/a "P," was at times the Inca of the older circle of the Maywood section of the Latin Kings and held a Nation position, and, in those roles, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

b.    JOSE F. HERNANDEZ, a/k/a "Nene," was at times the Inca and Chairman of the older circle of the Maywood section of the Latin Kings, and, in those roles, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

c.    MARIO A. HERNANDEZ, a/k/a "DK," was at times the Chief Enforcer of the older circle of the Maywood section of the Latin Kings, and, in that

role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

d.     ULISES DE LA CRUZ, a/k/a "Pansas," was at times the Cacique of the older circle of the Maywood section of the Latin Kings, and, in that role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

e.     MIGUEL MARTINEZ, a/k/a "Smokey," was at times the Cacique and Chief Enforcer of the older circle of the Maywood section of the Latin Kings, and, in those roles, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

f.     DAVID PEREZ, a/k/a "Monster," was at times the Inca of the younger circle of the Maywood section of the Latin Kings, and, in that role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

g.     RUBEN MORENO, a/k/a "Terrorist," was at times the Cacique of the younger circle of the Maywood section of the Latin Kings, and, in that role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

h.     OSCAR ORTIZ, a/k/a "Thirsty," was at times the Chief Enforcer of the younger circle of the Maywood section of the Latin Kings, and, in that role,

oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

      i.     EFRAIN MEDINA, a/k/a "Bowser," was at times the Enforcer of the younger circle of the Maywood section of the Latin Kings, and, in that role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

      j.     ELLEZER TORRES, a/k/a "Bad Boy," was at times a soldier in the younger circle of the Maywood section of the Latin Kings, and, in that role, under the direction of leaders of the Latin Kings, participated in and agreed to commit unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

      k.     EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa," was at times a soldier in the younger circle of the Maywood section of the Latin Kings, and, in that role, under the direction of leaders of the Latin Kings, participated in and agreed to commit unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

      l.     JOSE PENA, a/k/a "Dre," was at times the Enforcer of the younger circle of the Maywood section of the Latin Kings, and, in that role, oversaw, directed, guided, and participated in the unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

m.     JOSE A. VASQUEZ, a/k/a "Tinky," and "Pantera," was at times a soldier in the younger circle of the Maywood section of the Latin Kings, and, in that role, under the direction of leaders of the Latin Kings, participated in and agreed to commit unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

n.     ANGEL VILLAGRANA, a/k/a "Shy," was at times a soldier in the younger circle of the Maywood section of the Latin Kings, and, in that role, under the direction of leaders of the Latin Kings, participated in and agreed to commit unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

o.     EDUARDO HERNANDEZ, a/k/a "Lurch," was at times a soldier in the younger circle of the Maywood section of the Latin Kings, and, in that role, under the direction of leaders of the Latin Kings, participated in and agreed to commit unlawful and other activities in furtherance of the conduct of the affairs of the Latin Kings.

## RACKETEERING CONSPIRACY

7.     Beginning no later than in or about 1999, and continuing to in or about July 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

PIERE PAOLO GENNELL, a/k/a "P,"
JOSE F. HERNANDEZ, a/k/a "Nene,"
MARIO A. HERNANDEZ, a/k/a "DK,"
ULISES DE LA CRUZ, a/k/a "Pansas,"
MIGUEL MARTINEZ, a/k/a "Smokey,"

DAVID PEREZ, a/k/a "Monster,"
RUBEN MORENO, a/k/a "Terrorist,"
OSCAR ORTIZ, a/k/a "Thirsty,"
EFRAIN MEDINA, a/k/a "Bowser,"
ELLEZER TORRES, a/k/a "Bad Boy,"
EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"
JOSE PENA, a/k/a "Dre,"
JOSE A. VASQUEZ, a/k/a "Tinky," and "Pantera,"
ANGEL VILLAGRANA, a/k/a "Shy," and
EDUARDO HERNANDEZ, a/k/a "Lurch,"

defendants herein, and others known and unknown to the Grand Jury, being persons employed by and associated with the Latin Kings, an enterprise, which engaged in, and the activities of which affected, interstate and foreign commerce, knowingly conspired to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity consisting of multiple acts involving murder, chargeable under the following provisions: Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2(a) and (c)(3), 5/8-4, 5/9-1(a), and 5/9-2; and arson, chargeable under the following provisions: Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2(a) and (c)(3), 5/8-4, and 5/20-1(a); and multiple acts indictable under Title 18, United States Code, Section 1951 (relating to extortion).

8.     It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## MEANS AND METHODS OF THE CONSPIRACY

9.      It was further part of the conspiracy that the means and methods by which the defendants and their co-conspirators conducted and participated in the conduct of the affairs of the enterprise included the following:

a.      Defendants and their co-conspirators operated and conducted their affairs through a series of laws and policies, some of which were codified in a "manifesto" or "constitution."

b.      Defendants and their co-conspirators required members to be searched for recording devices before gang meetings and prohibited the possession of certain items during gang meetings.

c.      Defendants and their co-conspirators attended regular meetings, sometimes referred to as "demos" or "church," at which they discussed, planned, and otherwise engaged in criminal activity, including murder, attempted murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, and extortion.

d.      Defendants and their co-conspirators initiated members into the Latin Kings through the practice of causing them to endure physical assaults conducted by members of the enterprise at gang meetings.

e.      To enforce discipline and the rules of the enterprise, defendants and their co-conspirators engaged in a system of "violations," in which the

defendants and others physically beat members of the enterprise who violated rules or questioned authority.

        f.      Defendants and their co-conspirators employed and used gang-related terminology, symbols, color schemes, and gestures, including the phrases "king," "amor de rey," "crown," "king love," and a hand sign known as the "crown."

        g.      To perpetuate the enterprise and to maintain and extend its power, defendants and their co-conspirators committed illegal acts sometimes referred to as "burns," "hits," "missions," and being "sent," including murder, attempted murder, aggravated battery, aggravated discharge of a firearm, intimidation, and assault, against individuals who posed a threat to the enterprise or jeopardized its operations, including rival gang members and witnesses to the illegal activities of the enterprise. Pursuant to gang policy, defendants were required to participate in such "burns," "hits," and "missions."

        h.      To perpetuate the enterprise and to maintain and extend its power, gang leadership issued standing orders to shoot and beat rival gang members and "runaways" (former members of the enterprise who were no longer in good standing), which were sometimes referred to as "SOS" orders or "blast him" orders. SOS orders consisted of an order to either "shoot on sight" (meaning shoot to kill the victim) or "smash on sight" (meaning beat the victim). "Blast him" orders consisted of an order to shoot the victim.

  i.  Defendants and their co-conspirators were required to conduct "security" in the neighborhood controlled by the enterprise, which was sometimes referred to as "posting-up." As part of "security" or "posting up," defendants and their co-conspirators flashed gang signs and yelled gang slogans to demonstrate their control of the neighborhood. While conducting security, defendants and their co-conspirators were required to shoot on sight all rival gang members, and to retaliate for gang-related attacks upon the members and co-conspirators of the enterprise.

  j.  Defendants and their co-conspirators traveled to the neighborhoods controlled by rival gangs and spray painted the Latin Kings gang sign on buildings and other objects, which was sometimes referred to as "tagging."

  k.  Defendants and their co-conspirators earned money for their members through funds obtained by extorting a "street tax" from non-gang members who distributed controlled substances, including cocaine, within the geographical location controlled by the enterprise, as well as local businesses. Defendants and their co-conspirators enforced the "street tax" payments by engaging in acts of violence and threats of violence to ensure that the "street tax" was paid.

  l.  Defendants and their co-conspirators operated and conducted their affairs, in part, through a system in which the section leadership of the Latin Kings and others possessed, controlled, and otherwise maintained a monetary stash

on behalf of the enterprise, called a "box." As part of this practice, defendants and their co-conspirators paid weekly dues into the box, which, in turn, the enterprise used to bail gang members out of jail, send money to incarcerated gang members, hire attorneys for incarcerated gang members, and purchase firearms and vehicles for use by the gang.

  m. Defendants and their co-conspirators acquired automobiles, which were known by several names, including "rammers," for the purpose of using such "rammers" during missions against rival criminal organizations.

  n. Defendants and their co-conspirators used multiple cellular telephones and disposable cellular telephones to communicate with one another concerning and during the commission of the enterprise's illegal activities.

  o. Defendants and their co-conspirators obtained, used, carried, possessed, brandished, discharged, and concealed firearms within the enterprise to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against "runaways" and other rival criminal organizations and persons. Defendants and their co-conspirators also used firearms in connection with the enterprise's illegal activities, including murder, attempted murder, assault with a dangerous weapon, arson, and extortion.

  p. Defendants and their co-conspirators concealed and hid, and caused to be concealed and hidden, the purposes of the acts done in furtherance of the enterprise, and used coded language, surveillance, and counter-surveillance

techniques, and other means, to avoid detection and apprehension by law enforcement and otherwise to provide security to members and co-conspirators of the enterprise.

### NOTICE OF SPECIAL FINDINGS & ENHANCED SENTENCING AS TO THE RACKETEERING CONSPIRACY

*The Attempted Murder of Victim 1 by PIERE PAOLO GENNELL, aka "P," DAVID PEREZ, aka "Monster," EFRAIN MEDINA, aka "Bowser," ELLEZER TORRES, aka "Bad Boy," and JOSE PENA, aka "Dre"*

10.    On or about May 11, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division, defendants PIERE PAOLO GENNELL, DAVID PEREZ, EFRAIN MEDINA, ELLEZER TORRES, and JOSE PENA attempted to commit the murder of Victim 1. By the conduct described in this paragraph, GENNELL, PEREZ, MEDINA, TORRES, and PENA committed an act and threat involving murder, in violation of Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-4(a), 5/8-4(c)(1)(D), and 5/9-1(a), in that GENNELL, PEREZ, MEDINA, TORRES, and PENA, with the intent to commit first degree murder, did an act that constituted a substantial step toward the commission of first-degree murder; and defendants EFRAIN MEDINA and JOSE PENA personally discharged a firearm that proximately caused: (i) great bodily harm to another person; and (ii) permanent disfigurement to another person, namely, Victim 1.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT TWO

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Six of Count One of the Indictment are incorporated here.

2.     At times relevant to this Indictment, the Latin Kings, including its leadership, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely, a group of individuals associated in fact, which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.     At times relevant to this Indictment, the Latin Kings, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, acts involving murder and arson, in violation of Illinois state law, and acts indictable under Title 18, United States Code, Section 1951 (relating to extortion).

4.     Beginning on or about May 9, 2014, and continuing until on or about July 21, 2016, in the Northern District of Illinois, Eastern Division,

PIERE PAOLO GENNELL a/k/a "P,"
DAVID PEREZ a/k/a "Monster,"
EFRAIN MEDINA a/k/a "Bowser,"
ELLEZER TORRES a/k/a "Bad Boy," and
JOSE PENA a/k/a "Dre,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder an individual, namely, Victim 1, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2, and 5/9-1);

In violation of Title 18, United States Code, Sections 1959(a)(5).

## COUNT THREE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Three of Count Two are incorporated here.

2.      On or about May 11, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division,

> PIERE PAOLO GENNELL a/k/a "P,"
> DAVID PEREZ a/k/a "Monster,"
> EFRAIN MEDINA a/k/a "Bowser,"
> ELLEZER TORRES a/k/a "Bad Boy," and
> JOSE PENA a/k/a "Dre,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally attempt to murder an individual, namely, Victim 1, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-4, and 5/9-1);

In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## COUNT FOUR

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Three of Count Two are incorporated here.

2.     On or about May 11, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division,

PIERE PAOLO GENNELL a/k/a "P,"
DAVID PEREZ a/k/a "Monster,"
EFRAIN MEDINA a/k/a "Bowser,"
ELLEZER TORRES a/k/a "Bad Boy," and
JOSE PENA a/k/a "Dre,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally commit assault with a dangerous weapon upon an individual, namely, Victim 1, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/12-2(c)(2), and 5/24-1.2);

In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

-18-

## COUNT FIVE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about May 11, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division,

> EFRAIN MEDINA a/k/a "Bowser,"
> ELLEZER TORRES a/k/a "Bad Boy," and
> JOSE PENA a/k/a "Dre,"

defendants herein, and others known and unknown to the Grand Jury, did use, carry, brandish, and discharge a firearm, during and in relation to a crime of violence for which they each may be prosecuted in a court of the United States, namely, a violation of Title 18, United States Code, Section 1959(a), as charged in Counts Three and Four of this Indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT SIX

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Three of Count Two are incorporated here.

2.     Beginning on or about July 5, 2014, and continuing until on or about July 6, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

> DAVID PEREZ a/k/a "Monster,"
> RUBEN MORENO a/k/a "Terrorist,"
> OSCAR ORTIZ a/k/a "Thirsty,"
> EFRAIN MEDINA a/k/a "Bowser,"
> ELLEZER TORRES a/k/a "Bad Boy,"
> EDGAR VELARDE-SALDANA a/k/a "Chapo" and "Pisa,"
> JOSE PENA a/k/a "Dre," and
> ANGEL VILLAGRANA a/k/a "Shy,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally conspire to murder a rival gang member, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2, 5/8-4, and 5/9-1(a));

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT SEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Three of Count Two are incorporated here.

2.     On or about July 6, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"

defendant herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally commit assault with a dangerous weapon upon an individual, namely, a law enforcement officer, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/12-2(c)(2), 5/12-2(c)(6), and 5/24-1.2);

In violation of Title 18, United States Code, Sections 1959(a)(3).

## COUNT EIGHT

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.     Paragraphs One through Three of Count Two are incorporated here.

2.     On or about July 6, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"

defendant herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally attempt to murder an individual, namely, a law enforcement officer, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2, 5/8-4, and 5/9-1(a));

In violation of Title 18, United States Code, Sections 1959(a)(5).

## COUNT NINE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about July 6, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"

defendant herein, did use, carry, brandish, and discharge a firearm, during and in relation to a crime of violence for which they each may be prosecuted in a court of the United States, namely, a violation of Title 18, United States Code, Section 1959(a)(3), as charged in Counts Seven and Eight of the Indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT TEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about July 6, 2014, in the Northern District of Illinois, Eastern Division,

EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"

defendant herein, did forcibly assault, resist, oppose, impede, intimidate, and interfere with an officer of the United States as designated in Title 18, United States Code, Section 1114, namely, a Melrose Park police officer, who was assisting agents and employees from the Federal Bureau of Investigation, while the Melrose Park police officer was engaged in the performance of his official duties, and in doing so did use a deadly and dangerous weapon, namely a firearm;

In violation of Title 18, United States Code, Sections 111(a)(1) and (b).

## COUNT ELEVEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about July 6, 2014, in the Northern District of Illinois, Eastern Division,

EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"

defendant herein, did attempt to kill a Melrose Park police officer, who was assisting agents and employees from the Federal Bureau of Investigation, an agency of the United States Government, in the performance of their official duties;

In violation of Title 18, United States Code, Sections 1113 and 1114.

## COUNT TWELVE

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.      Paragraphs One through Three of Count Two are incorporated here.

2.      On or about August 31, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

OSCAR ORTIZ a/k/a "Thirsty," and
EDGAR VELARDE-SALDANA a/k/a "Chapo" and "Pisa,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally commit assault with a dangerous weapon upon an individual, namely, Victim 2, a rival gang member, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/12-2(c)(2), and 5/24-1.2);

In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT THIRTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

1.    Paragraphs One through Three of Count Two are incorporated here.

2.    On or about August 31, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

OSCAR ORTIZ a/k/a "Thirsty," and
EDGAR VELARDE-SALDANA a/k/a "Chapo" and "Pisa,"

defendants herein, and others known and unknown to the grand jury, for the purpose of maintaining and increasing position in the Latin Kings, an enterprise engaged in racketeering activity, did knowingly and intentionally attempt to murder an individual, namely, Victim 2, a rival gang member, in violation of the laws of the State of Illinois (Chapter 720, Illinois Compiled Statutes, Sections 5/5-1, 5/5-2, 5/8-1, 5/8-2, 5/8-4, and 5/9-1(a));

In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.

## COUNT FOURTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about August 31, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

OSCAR ORTIZ a/k/a "Thirsty," and
EDGAR VELARDE-SALDANA a/k/a "Chapo" and "Pisa,"

defendants herein, and others known and unknown to the Grand Jury, did use, carry, brandish, and discharge a firearm, namely, a Llama IXC .45 caliber pistol, bearing serial number 07-04-16010-95, during and in relation to a crime of violence for which they each may be prosecuted in a court of the United States, namely, a violation of Title 18, United States Code, Section 1959(a), as charged in Counts Twelve and Thirteen of this Indictment;

In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

## COUNT FIFTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about April 15, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

MARIO HERNANDEZ a/k/a "DK,"

defendant herein, previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely, a Smith & Wesson model M&P 15, 556 caliber rifle, bearing serial number SU11350, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SIXTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about August 29, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division,

### DAVID PEREZ a/k/a "Monster,"

defendant herein, previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely: (1) a Smith & Wesson model 41, .22 caliber pistol, bearing serial number 73765; (2) a Colt single-action model Buntline Scout, .22 caliber pistol, bearing serial number 132005F; (3) a Deutschewerke, .32 caliber pistol, bearing serial number 73572; and (4) a Mossberg, model 500C, 20 gauge shotgun, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT SEVENTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about September 1, 2014, at Maywood, in the Northern District of Illinois, Eastern Division,

DAVID PEREZ a/k/a "Monster," and
EDGAR VELARDE-SALDANA a/k/a "Chapo" and "Pisa,"

defendants herein, each having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely a Llama model IXC, .45 caliber pistol, bearing serial number 07-04-16010-95, which firearm had traveled in interstate commerce prior to the defendants' possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

### COUNT EIGHTEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about September 2, 2014, at Melrose Park, in the Northern District of Illinois, Eastern Division,

DAVID PEREZ a/k/a "Monster,"

defendant herein, previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely a Ruger model Blackhawk, .357 caliber pistol, bearing serial number 31-41413, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

## COUNT NINETEEN

The SPECIAL JANUARY 2015 GRAND JURY further charges:

On or about September 17, 2014, at Hinsdale, in the Northern District of Illinois, Eastern Division,

DAVID PEREZ a/k/a "Monster,"

defendant herein, previously having been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess in and affecting interstate commerce a firearm, namely a DPMS model AR-15, .223 caliber rifle, bearing serial number DM26382K, which firearm had traveled in interstate commerce prior to the defendant's possession of the firearm;

In violation of Title 18, United States Code, Section 922(g)(1).

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2015 GRAND JURY further alleges:

1.     The allegations of Count One of this Indictment are incorporated here for the purpose of alleging that certain property is subject to forfeiture to the United States, pursuant to Title 18, United States Code, Section 1963.

2.     As a result of their violation of Title 18, United States Code, Section 1962(d), as alleged in the foregoing Indictment,

> PIERE PAOLO GENNELL, a/k/a "P,"
> JOSE F. HERNANDEZ, a/k/a "Nene,"
> MARIO A. HERNANDEZ, a/k/a "DK,"
> ULISES DE LA CRUZ, a/k/a "Pansas,"
> MIGUEL MARTINEZ, a/k/a "Smokey,"
> DAVID PEREZ, a/k/a "Monster,"
> RUBEN MORENO, a/k/a "Terrorist,"
> OSCAR ORTIZ, a/k/a "Thirsty,"
> EFRAIN MEDINA, a/k/a "Bowser,"
> ELLEZER TORRES, a/k/a "Bad Boy,"
> EDGAR VELARDE-SALDANA, a/k/a "Chapo" and "Pisa,"
> JOSE PENA, a/k/a "Dre,"
> JOSE A. VASQUEZ, a/k/a "Tinky," and "Pantera,"
> ANGEL VILLAGRANA, a/k/a "Shy," and
> EDUARDO HERNANDEZ, a/k/a "Lurch,"

defendants herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), any interest acquired or maintained in violation of Section 1962; any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of Section 1962; and any property

-34-

constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of Section 1962.

3. If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), as a result of any act or omission of the defendants:

a. Cannot be located upon the exercise of due diligence;

b. Has been transferred to, sold to, or deposited with a third person;

c. Has been placed beyond the jurisdiction of the Court;

d. Has been substantially diminished in value;

e. Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of substitute property belonging to the defendants under the provisions of Title 18, United States Code, Section 1963(m).

A TRUE BILL:

_____

F O R E P E R S O N

_____

UNITED STATES ATTORNEY